Upon the trial at Buncombe, on the fall circuit of 1838, before his Honor, Judge Dick, the case was as follows: The plaintiff had obtained a judgment in the county court of Buncombe against Thomas E. Justice, and issued a ca. sa. returnable to July term, 1833. The sheriff arrested Justice on 22 May, 1833, and took bond and security under the (600) insolvent debtor's act, for his appearance at the said July term, 1833. On 19 June ensuing his arrest, Justice filed in the clerk's office a schedule of all his property, and at the following term, in July, 1833, swore to the truth of the schedule, took the insolvent's oath, and was discharged under the act for the relief of insolvent debtors. But after Justice had filed his schedule in the clerk's office the deputy sheriff and a constable levied divers executions, issued by a justice of the peace against him, upon the property mentioned in the said schedule. A writ issued from July term, 1833, directed to the sheriff, which, after reciting *Page 473 
that a schedule had been made by Justice, in consequence of a ca. sa. issued against him by Lanning, for the sum of $74.58 debt, and 35 cents cost, returnable to July term, 1838, and reciting the property contained in the schedule, concluded in these words:
"You are commanded to sell the same according to law, or so much thereof as will make a sum sufficient to satisfy the foregoing several sums of money, and other endorsed cost and your fees for so doing; and the moneys so had, have you before our next court of pleas and quarter sessions on the fourth Monday in August next, then and there to render the same to the said court, or to the parties entitled to receive the same."
The sheriff, by his said deputy, sold the scheduled property; and among the rest the equity of redemption in a slave which Justice had before mortgaged. But, instead of bringing the money into court, he paid it over to the owners of the executions aforesaid, which had been issued by a justice of the peace, and for costs. His Honor charged the jury that the plaintiff was entitled to recover, on the first breach assigned, the money raised by the sale of the equitable interest of the slave held in mortgage. He said that the officers who held the justice's execution could not levy on the equity of redemption in personal property. The plaintiff, under this charge, had a verdict and judgment for the full amount of his demand, and the defendant appealed.
When a debtor is in custody, or who is arrested on a ca. (601)sa., wishes to have the benefit of the insolvent act, he shall, for the benefit of his creditors, file a schedule of his property with the clerk of the court, at least ten days before the sitting of the court at which he proposes to avail himself of the bent. 1 Rev. Stat., ch. 58, sec. 12. All the property and debts contained in such schedule shall vest in the sheriff of the county where such schedule shall be filed. The sheriff shall sell the property and collect the debts, and upon oath pay the same into court where the schedule was filed, to be distributed. Sec. 14. The sheriff thus becomes the legal assignee of all the property, debts and effects of the insolvent, for the purpose of collection and paying into court. It is unnecessary now to inquire whether, when the insolvent is discharged, the sheriff's title as assignee begins upon, and relates back to, the day when the insolvent filed his schedule in the clerk's office. When the funds are collected by the sheriff and paid into court, the court shall appoint two commissioners to examine the claims of all and singular the creditors, as well those at whose suit the insolvent was committed as of all others. And they shall make distribution among each and every of the creditors *Page 474 
who shall prove their debts, in proportion to their respective demands. And the clerk shall pay such moneys into the hands of the two commissioners, for the purposes aforesaid. Section 15. Thus it appears that an adjudication or order that the sheriff should sell the property in the schedule to satisfy the plaintiff's demand would have been in direct hostility to the law, for the plaintiff had no other interest in that property than such as was common to all the creditors of the insolvent. No such adjudication was made, and the writ issued by the clerk to enforce such supposed adjudication was wholly without authority. We are at a loss, therefore, to see how it was possible to maintain either of the two breaches assigned, either that the sheriff had collected a judgment of the plaintiff or had neglected to collect such a judgment. The true course of proceeding would have been to have a rule of court on the sheriff to sell the property so assigned, and bring the money into (602) court, and to attach him, if the rule were not complied with.
As to the breach assigned, in such general and broad terms, as thethird breach in this case is, the court could not receive any evidence. The defendant could not know how to defend himself. However, the charge of the judge was applicable only to the first breach assigned. For the reasons given, we think it was erroneous, and therefore that the judgment must be reversed and a new trial awarded.
PER CURIAM. Judgment reversed.